UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN MAYON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1913** |
| **NATHAN CAIN** | **SECTION: "B"(3)** |

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Kevin Mayon, is a state prisoner incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana. After a jury had been empaneled to try his case, petitioner elected to plead guilty on November 9, 2010, and he was sentenced under Louisiana law as follows: aggravated burglary, twenty-seven and one-half years; aggravated burglary, fifteen years; attempted aggravated burglary, twenty-seven and one-half years; and attempted burglary, six years. It was ordered that his sentences be served concurrently.[1] After he was granted an out-

---

[1] State Rec., Vol. 1 of 7, transcript of November 9, 2010; State Rec., Vol. 1 of 7, minute entry dated November 9, 2010; State Rec., Vol. 1 of 7, plea form. Petitioner entered his pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). "An Alford plea allows a defendant to plead guilty while maintaining his factual innocence." United States v. Flores-Vasquez, 641 F.3d 667, 671 n.3 (5th Cir. 2011).

of-time appeal,[2] his convictions and sentences were affirmed by the Louisiana Fifth Circuit Court of Appeal on February 28, 2012.[3]  He did not seek further direct review.

On November 9, 2012, petitioner filed an application for post-conviction relief with the state district court.[4]  That application was denied on January 23, 2014.[5]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal[6] and the Louisiana Supreme Court.[7]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[8]  The state does not challenge the timeliness of the application; however, the state argues both that petitioner's claims are unexhausted and lack merit.[9]  Petitioner has filed a reply to the state's response.[10]

## Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).  That requirement applies to all levels of review in the state court

---

[2] State Rec., Vol. 1 of 7, Order dated April 4, 2011.
[3] State v. Mayon, 88 So.3d 1115 (La. App. 5th Cir. 2012); State Rec., Vol. 1 of 7.
[4] State Rec., Vol. 1 of 7.
[5] State Rec., Vol. 1 of 7, Order dated January 23, 2014.
[6] State v. Mayon, No. 14-KH-380 (La. App. 5th Cir. June 18, 2014); State Rec., Vol. 1 of 7.
[7] State v. Mayon, 162 So.3d 381 (La. 2015); State Rec., Vol. 1 of 7.
[8] Rec. Doc. 4.
[9] Rec. Doc. 19.
[10] Rec. Doc. 20.

system, meaning that a petitioner's federal claims must have been "fairly presented" to "each appropriate state court (including a state supreme court with powers of discretionary review)." Baldwin, 541 U.S. at 29.

Here, the state argues that petitioner's claims are unexhausted because they are not substantially equivalent to the claims he asserted to the state courts in the post-conviction proceedings.[11] In his reply to the state's response, petitioner counters that he is seeking review of the same claims he raised in the state post-conviction proceedings and that the claims were fairly presented to the state courts.[12]

Where, as here, a petitioner is proceeding *pro se*, his claims must be liberally construed. See, e.g., Hernandez v. Thaler, 630 F.3d 420, 426 (5th Cir. 2011) ("*[P]ro se* habeas petitions are not held to the same stringent and rigorous standards as are pleadings filed by lawyers. The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." (footnotes and quotation marks omitted)). Such liberal construction often makes a determination on exhaustion difficult when, over the course of the proceedings, a petitioner has altered the manner in which he discusses his claims. However, in both the state courts and in this Court, petitioner's claims concern the effectiveness of his counsel and the voluntariness of his pleas, and the Court will take him at his word that he is merely attempting to assert the same claims here that he asserted in the state courts.

Moreover, in any event, it must be remembered that a federal court has the authority to deny habeas claims on the merits regardless of whether the petitioner exhausted his state court

---

[11] Rec. Doc. 19, pp. 4-7.
[12] Rec. Doc. 20.

remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Because petitioner's claims clearly fail on the merits, the undersigned recommends that, in the interest of judicial economy, they simply be denied on that basis.

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be

5

>undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

>[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

### Petitioner's Claims

Petitioner claims that his counsel was ineffective and coerced him into pleading guilty. In the state post-conviction proceedings, the state district court rejected those claims, holding:

> The petitioner, through counsel, files an application for post-conviction relief, raising the following claims:
>
> 1. Ineffective assistance of trial counsel in:
>    a. Failure to inform the court of the defendant's desire to not plead guilty;
>    b. Brady claims (to be supplemented)
>    c. Crawford issues
>
> 2. Conviction was obtained in violation of the constitution of the United States in that the plea of guilty was coerced.
>
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that

counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

In cases where the defendant has pled guilty, he must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (La. 1985).  The voluntariness of the guilty plea defends on whether counsel's advice was within the wide-range of competence demanded of attorneys in criminal cases.  State *ex rel.* Graffagnino v. King, 436 So.2d 559 (La. 1983).

### Claim 1(a)

The petitioner claims that suffered ineffective assistance of counsel when counsel failed to inform the court of petitioner's desire not to go forward with the plea of guilty.  He argues that he was intimidated into pleading guilty, as he initially informed the court prior to entering his plea.

The court finds no merit to this claim.  As the State points out in its response, upon the petitioner informing the court that he was intimidated into pleading guilty, the court refused to accept the guilty plea, halted proceedings and called for a jury. After private consultation with the petitioner, counsel informed the court that he explained the circumstances to the defendant and the defendant had misunderstood when asked by the court if he had been intimidated.  The court then proceeded to conduct a colloquy, and thoroughly explained to petitioner the aspect of voluntariness of entering a plea.  After a brief recess, petitioner informed the court of his intention to plead guilty, and told the court that he was not forced, threatened, coerced or intimidated into pleading guilty.  Petitioner was repeatedly advised that no one could force him to plead guilty, and that pleading guilty was his own decision.  Counsel continued to advise him throughout the proceedings.

Furthermore, counsel significantly reduced petitioner's sentencing exposure from a possible total of 81 years to 27.5 years.  Petitioner fails to prove that he was intimidated, forced or threatened into pleading guilty, any deficiency in counsel's performance, or any prejudice resulting.

### Claim 1(b) and claim 1(c)

As the State surmises in its response, petitioner is precluded from raising claim 1(b), ineffective assistance of counsel concerning Brady claims, and claim 1c, ineffective assistance of counsel concerning Crawford confrontation issues.  As

8

the Supreme Court has ruled that when a petitioner pleads guilty, he may not assert claims relating to events prior to entering the guilty plea. The Supreme Court has recognized:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973), citing McMann v. Richardson, 397 U.S. 759, 771 (1970).

Additionally, the court notes that petitioner fails to brief claim 1(b) and provide any arguments or evidence in support of this claim.

### Claim 2

Petitioner does not brief this issue in his memorandum, or provide any argument, facts or evidence in support. Under LSA-C.Cr.P. art. 930.2, the petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. The defendant has not presented any evidence in support of any of this claim.

As previously addressed above, the court finds that petitioner's guilty plea was made freely and voluntarily, without coercion or any intimidation, as defendant was repeatedly advised of his rights and chose to plead guilty, foregoing a trial.[13]

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal likewise held:

> We find that the trial court did not err in denying relator's application for post-conviction relief in its January 23, 2014 ruling. Relator has failed to present any evidence that would support his position that counsel was ineffective under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d. (1985). We further find that relator has failed to present any evidence to support his claim that his guilty plea was made under coercion or intimidation. Based on the Court's review of the Boykin transcript dated November 9, 2010, we find that the trial court properly concluded that relator's guilty plea was made freely and voluntarily.

---

[13] State Rec., Vol. 1 of 7, Order dated January 23, 2014.

> As such, we find that the trial court did not err in finding that relator was precluded from raising the claim that he was denied the right to confront his accusers due to ineffective assistance of counsel. See Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).
> Lastly, relator asserted his claim that the underlying conviction was obtained in violation of the United States Constitution. However, in both his application for post-conviction relief and this writ application, relator failed to brief this particular claim in his memorandum of law, or to provide any argument, facts or evidence to support this claim. Thus, under U.R.C.A., Rule 1-3, we find that, on the showing made, this writ application presents no issues or assignments of error for this Court to review as to that claim.[14]

Without assigning additional reasons, the Louisiana Supreme Court thereafter also denied relief.[15]

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

---

[14] State v. Mayon, No. 14-KH-380 (La. App. 5th Cir. June 18, 2014); State Rec., Vol. 1 of 7.
[15] State v. Mayon, 162 So.3d 381 (La. 2015); State Rec., Vol. 1 of 7.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation

11

marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). As the state court noted, Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the instant case, petitioner contends that his right to the effective assistance of counsel was violated by his counsel's actions to "pressure" him to plead guilty.  However, petitioner has presented no evidence whatsoever to support his self-serving allegations regarding the purported coercion by counsel.  Moreover, the transcript of the plea makes it abundantly clear that the judge was extremely careful to explore petitioner's allegation that he felt "intimidated" and to ensure that his ultimate plea was voluntary.  For example, the transcript reflects the following exchange:

> THE COURT:
>     Mr. Mayon, have you been forced, threatened or coerced into entering these pleas of guilty, sir?
>
> THE DEFENDANT:
>     Yeah, I've been intimidated.
>
> THE COURT:
>     Well, with that being said, the Court will not be able to accept this plea, sir. This plea has to be free and voluntary on your part and if you're being intimidated by whatever source, persons or whatever that this Court cannot take a plea from you if you're being forced into or intimidated into taking this plea of guilty, sir. We will proceed to trial.[16]

---

[16] State Rec., Vol. 1 of 7, transcript of November 9, 2010, p. 7.

13

As the court then proceeded to handle other matters, petitioner consulted with his counsel. When the court thereafter returned to petitioner's case, the following exchange occurred on the record:

> MR. WILLIAMS [defense counsel]:
>     Your Honor, during the course of the taking of the plea from [another defendant appearing before the court], I had a discussion with my client regarding his feeling that he was intimidated. I explained to him all of the circumstances that are surrounding this plea, all of the discussions that he and I have had regarding the case. At some point in time there have been heated discussions between myself and Mr. Mayon, and Mr. Mayon, I explained to him that sometimes lawyers have to work hard in doing criminal defense and I've explained to him what all of his options are. And I in – in no uncertain terms explained to him that this plea, the one that he was attempting to enter before Your Honor, had to be completely free and voluntary. It had to be his decision and he misunderstood when the Court said, "Have you been intimidated," and I've discussed that with him and Mr. Mayon has indicated to me that he would like to continue with his plea, that he is doing this of his own free will and I'll allow the Court to ask him whatever questions the Court feels necessary to guarantee the voluntariness of this plea.
>
> THE COURT:
>     Mr. Mayon, the Court, your lawyer, your family, your friends or whoever may have any influence on you in this matter, sir, none of us can force you to accept this plea, sir. You have a right to a trial in this matter. As you see, we already have a jury seated in this matter. I'm not here to force this plea upon you, sir. Mr. Williams cannot force this plea upon you. No family member of anyone else can force this plea upon you. This has to be your decision. You have to be able to live with the decision that you make here today, sir. So none of us can force you, and I most certainly am not going to deny you to have your right to a trial in this matter. You do not have to tender a plea of guilty to this Court. If you wish to exercise your right to a trial, that's what those jurors are there for. That's how the last day has been spent getting those jurors here. Your lawyer has been here doing a great job in selecting a jury that he thinks could be fair and impartial and render a verdict – in rendering a verdict in this matter. You have to live with this decision. I'm not forcing you to accept any – any type of plea offer in this matter. Mr. Williams cannot force you. No one can intimidate you. This has to be a decision that you make on your own, and if you think a plea deal is not in your best interest, don't take it, sir. Exercise your right to a trial in this matter if that's what you wish to do. But if you enter this plea, it's a plea. It's an agreement that you're entering into and no one can make you enter into that agreement. As I've said over and over, I can't do it. Your lawyer can't do it. Your family and friends can't do it. It's a

decision that you have to make. After consulting with them, you have to be comfortable with what you're doing. Do you understand what I'm saying?

THE DEFENDANT:
    Yes, sir.

THE COURT:
    If you feel that you're being forced to do this, if you feel that you're being intimidated into doing this or coerced in any way, shape or form, sir, the jury is waiting in the back to come out here and – and do their job. Your lawyer is here. You have a very good lawyer. I know he's willing to do his job and we can go forward with the trial. Please do not feel any pressure to accept the deal in this matter. Do you understand that, sir?

THE DEFENDANT:
    Yes, sir.

THE COURT:
    So, with that said, what is your pleasure, sir?

THE DEFENDANT:
    Can I ask him a question?

THE COURT:
    Yes, sir.

MR. WILLIAMS:
    We're going to go to trial.

THE DEFENDANT:
    Thank you, Judge Faulkner.

THE COURT:
    Thank you, sir.
    The Court will be in a brief recess.[17]

Shortly thereafter, the matter then resumed, and petitioner had once again changed his mind:

---

[17] State Rec., Vol. 1 of 7, transcript of November 9, 2010, pp. 8-11.

> MR. WILLIAMS:
> Your Honor, when we were in the mist [sic] of the plea, the resumption of the plea before we had a recess Mr. Mayon asked me a question regarding my representation of him. I answered the question and I spoke to him further about the plea and I believe after discussing that with him and with the Court Mr. Mayon asked if I would speak to the Court about considering a 25-year sentence. I did ask the Court that and the Court advised me that – that the sentence that you would pronounce would be 27-and-a-half years and I've advised my client of that and my client is now willing to accept that plea. I believe he's now doing it after a great deal of explanation of all of his rights, that it is completely free and voluntary on his part and I would tender Mr. Mayon back to the Court for further examination.
>
> THE COURT:
> All right. Mr. Mayon, we've gone over this twice with regard to whether this is a free and voluntary plea, sir. I don't know what else to add to what I said to you previously, sir, other than this is totally your choice, sir. No one here can force you into entering into this plea. If you do not like the terms of the Court's sentence, you don't have to agree to that, sir. That's what the jury is here for. They may come back with a different verdict in this matter. This is a plea of guilty and it's your decision to plead guilty. However, as I said previously, you have a right to have a jury to make a decision on this matter. However, if you enter a plea of guilty, sir, that the trial will be discontinued and this is going to be it. So you have to live with this decision again. So, what is your pleasure, sir? Do you wish to proceed with the trial of this matter or do you wish to enter a plea of guilty?
>
> THE DEFENDANT:
> I'm going to enter a plea of guilty.[18]

The plea colloquy then resumed and, upon further questioning, petitioner answered that he had not been coerced into pleading guilty:

> THE COURT:
> All right. I'll ask you this question again, sir: Have you been forced, threated or coerced or intimidated into making this -- into entering into this plea of guilty, sir?
>
> THE DEFENDANT:
> No, sir.[19]

---

[18] Id. at pp. 12-13.
[19] Id. at pp. 14-15.

Accordingly, petitioner's allegation concerning purported intimidation was adequately explored at the time his pleas were taken, and the judge was convinced that there was in fact no coercion which would render the pleas involuntary. In light of the foregoing and petitioner's statement under oath that had not in fact been "forced, threatened or coerced or intimidated" into entering his pleas, he "face[s] a heavy burden in proving that [he is] entitled to relief because such testimony in open court carries a strong presumption of verity." DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994). Therefore, for petitioner to meet his burden of proof to establish that relief is warranted, "there must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." United States v. Raetzsch, 781 F.2d 1149, 1151 (5th Cir. 1986). Where, as here, a petitioner is unable to provide any independent evidence to support his claims, he cannot meet the burden of proof necessary to refute his open-court statements as to the free and voluntary nature of his plea. See, e.g., Lyon v. Scott, No. 03-05539, 1995 WL 71359, at *2 (5th Cir. Jan. 31, 1995); Lewis v. Quarterman, Civ. Action No. G-04-527, 2007 WL 2021770, at *3 (S.D. Tex. July 10, 2007) ("Petitioner, making nothing more than self-serving allegations that his pleas was involuntary, has not satisfied his heavy burden of rebutting the presumption of the declarations he made in open court.").

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

Out of an abundance of caution, the undersigned next notes that petitioner does not appear to be reasserting in this federal proceeding the claims he asserted in his state post-conviction application concerning alleged violations of his rights under Brady[20] and Crawford.[21] However, in any event, the state court was correct in finding that any such claims were waived by petitioner's guilty pleas. A knowing and voluntary guilty plea waives all nonjurisdictional deprivations that occurred prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Diaz, 733 F.2d 371, 376 (5th Cir. 1984); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). The waiver includes claims concerning alleged Brady violations. See United States v. Conroy, 567 F.3d 174, 179 (5th Cir. 2009); Orman v. Cain, 228 F.3d 616, 617 (5th Cir. 2000) ("Brady requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty."). It likewise includes claims of alleged Confrontation Clause violations. Dominguez v. Henderson, 447 F.2d 207, 208 (5th Cir. 1971) ("The voluntary guilty plea waived all non-jurisdictional defenses, so that petitioner cannot now raise issues concerning his rights to a jury trial and confrontation of witnesses."). In that petitioner's pleas were voluntary for the reasons noted herein, these claims are indeed waived.

Lastly, the Court notes that, in addition to the ineffective assistance claim already discussed, petitioner appears to assert a separate but related claim that his pleas were involuntary. It is beyond dispute that a guilty plea must be voluntary. Parke v. Raley, 506 U.S. 20, 28 (1992). A "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." United States v. Hernandez, 234 F.3d 252, 254 n.3 (5th Cir.

---

[20] See Brady v. Maryland, 373 U.S. 83 (1963).
[21] See Crawford v. Washington, 541 U.S. 36 (2004). In Crawford, the Supreme Court held that the Confrontation Clause bars admission of out-of-court "testimonial" statements by a witness, unless witness is unavailable and the defendant had prior opportunity to cross-examine witness.

18

2000)  However, when a habeas petitioner challenges the validity of his guilty plea as involuntary, he carries the burden of proof to establish that fact.  See, e.g., Hines v. Louisiana, 102 F.Supp.2d 690, 694 (E.D. La. 2000).  Again, for the reasons already discussed, it is clear that petitioner failed to meet his burden of proof.

As noted in the prior section concerning his ineffective assistance claim, petitioner has offered no evidence whatsoever in support of his self-serving assertions that his pleas were coerced.  Moreover, the transcript reflects that the judge went to great lengths to ensure that petitioner's pleas were not the product of intimidation or coercion.  While it is clear that petitioner was not completely satisfied with the process and wanted a more favorable plea deal, even attempting to negotiate a lesser sentence at the last moment, that is neither uncommon nor indicative of impermissible coercion.  As the United States Supreme Court has noted:

> The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea.  While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted).  Here, the fact that petitioner was not particularly enamored of the only two choices available to him (i.e. pleading guilty in return for less than he would like or going to trial and receiving no concessions at all) is of no constitutional consequence, and it in no way rendered his choice illusory or his pleas coerced.  Accordingly, this claim was properly denied by the state courts.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Kevin Mayon be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[22]

New Orleans, Louisiana, this eighth day of February, 2017.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[22] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.